UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L & W LLC, *et al.*,

      Plaintiffs,

v.

SONORA FORMING S.A. de C.V.,

      Defendant.

Case No. 26-cv-11312
Hon. Matthew F. Leitman

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 11)

Defendant Sonora Forming S.A. de C.V. ("Sonora") is a tier-1 automotive supplier that supplies parts for use in certain vehicles manufactured by Ford Motor Company.  Plaintiffs L&W LLC, L&W Cleveland, Inc., and Tower Automotive Operations USA I, LLC (collectively, "Tower") are tier-2 automotive suppliers that supply parts to Sonora.

Now before the Court is a motion for a preliminary injunction filed by Sonora. (*See* Mot., ECF No. 11.)  In that motion, Sonora asks the Court to order Tower to continue supplying parts to Sonora under the terms of certain purchase orders that Sonora issued to Tower.

The Court held a hearing on the motion on June 17, 2026.  The Court did not announce a ruling on the motion during that hearing.  Instead, the Court convened

an on-the-record status conference on June 23, 2026, and during that conference, the Court orally granted Sonora's motion and explained in detail its reasons for doing so. (*See* 06/23/2026 Conf. Tr., ECF No. 21.)  The Court incorporates that detailed explanation in full into this order.  The Court now issues this order to memorialize its ruling pursuant to Rule 65(d)(1) of the Federal Rules of Civil Procedure.

As noted above, Sonora is a tier-1 auto supplier that manufactures front suspension assemblies for use in certain Ford vehicles.  Beginning in 2019, and in each subsequent year except for 2022, Sonora issued a series of purchase orders to Tower for parts that Sonora needed to manufacture the suspension assemblies.[1]  Each purchase order expired at the end of the calendar year in which it was issued. (*See*, *e.g.*, 2023 Purchase Orders, bearing the expiration date of December 31, 2023, ECF No. 11-7.)  Consistent with this practice, in 2024 Sonora issued a series of purchase orders to Tower that bore an expiration date of December 31, 2024 (the "2024 Purchase Orders"). (*See* 2024 Purchase Orders, ECF No. 11-8.)

When the 2024 Purchase Orders expired on December 31, 2024, Sonora did not issue a new set of written purchase orders for 2025.  Nor did it issue a new set of written purchase orders for 2026.  Nonetheless (and even though the 2024 Purchase Orders had expired), from January 1, 2025, through March of 2026, the

---

[1] Sonora did not issue a purchase order to Tower for the calendar year 2022, but the parties nonetheless continued their performance in the ordinary course during that year.

parties continued to perform as if the 2024 Purchase Orders remained in place. Indeed, as counsel for Tower candidly acknowledged during the June 17th hearing, the parties' course of performance throughout 2025 and the first quarter of 2026 was identical to their course of performance prior to the expiration of the 2024 Purchase Orders. And there is no evidence in the current record that during those 15 months either party ever suggested that Sonora's purchase of the parts in question was not governed by the terms of the 2024 Purchase Orders. Then, in March 2026, Tower suggested for the first time that the terms of the 2024 Purchase Orders did not govern – and had not governed since January 1, 2025 – because the orders had expired. Tower has indicated that it will refuse to ship parts under the terms of the 2024 Purchase Orders and will only continue to ship if (1) Sonora agrees to price increases and different terms and conditions and (2) Sonora affiliates also renegotiate other supply contracts with Tower.

There is now a dispute about whether Tower is obligated to continue to sell parts to Sonora under the terms of the 2024 Purchase Orders. Sonora says that Tower must do so; Tower disagrees.

On April 21, 2026, Tower filed this action in which it asks the Court to issue a declaratory judgment that (1) "The [2024] Purchase Orders expired according to their terms on December 31, 2024" and (2) Tower has "no obligation under the [2024] Purchase Orders, or otherwise, to continue supplying [p]arts to Sonora."

(Compl., ECF No. 1, PageID.7-8.)  On May 18, 2026, Sonora filed a motion for preliminary injunction in which it asked the Court to, among other things, enter a preliminary junction "requiring [Tower] to immediately resume shipments of the [p]arts as and when ordered by [Sonora], pursuant to the terms of the [2024] Purchase Orders and at the prices stated in the [2024] Purchase Orders." (Mot., ECF No. 11, PageID.39.)  For the reasons explained in detail on the record during the June 23, 2026, status conference, the Court concludes that Sonora is entitled to the preliminary injunction it seeks.  The Court summarizes its reasoning below.

The first factor that the Court must consider is whether Sonora has shown a strong likelihood of success on the merits.  It has.  Under the case law cited by the Court during the status conference, Sonora has shown that the parties, through their conduct in 2025 and the first quarter of 2026, twice renewed the 2024 Purchase Orders for one-year terms – with the first renewal expiring on December 31, 2025, and the second renewal expiring on December 31, 2026.  Thus, Sonora's purchase of the parts in question is governed by the terms of the 2024 Purchase Orders until December 31, 2026.  Moreover, contrary to Tower's argument, the quantity term of the 2024 Purchase Orders – which continues to apply based upon the renewal of those orders for 2026 – satisfies the U.C.C. Statute of Frauds.  That quantity term requires Sonora to purchase "no less than one piece or unit of each of the Goods or the Services and no more than one hundred percent (100%) of [its] requirements."

(Terms and Conditions, ECF No. 11-5, PageID.99.)  The Michigan Court of Appeals has held in a binding, published decision that this exact quantity term satisfies the U.C.C. Statute of Frauds. *See Cadillac Rubber & Plastics, Inc. v. Tubular Metal Systems, LLC,* 952 N.W.2d 576 (Mich. App. 2020).  That court re-affirmed the continued viability of *Cadilliac Rubber* in its more-recent decision in *FCA US LLC v. Kamax Inc.,* --- N.W.3d ----, 2025 WL 1420392 (Mich. App. May 14, 2025).  In sum, for all of the reasons explained above and in detail on the record, the Court concludes that the 2024 Purchase Orders remain in effect through the end of the calendar year 2026 and satisfy the U.C.C. Statute of Frauds.  Sonora has therefore shown a strong likelihood that it will succeed on the merits of its assertion that Tower is obligated to continue performing through December 31, 2026, under the terms of the 2024 Purchase Orders.

The second factor that the Court must consider is whether Sonora would suffer irreparable harm absent a preliminary injunction.  It would.  Judges on this Court have repeatedly held that the kind of supply-chain disruption that will result from Tower's refusal to continue to supply Sonra constitutes irreparable harm that supports preliminary injunctive relief. *See, e.g.*, *Tower Automotive Operations USA I, LLC v. Vari-Form Manufacturing Inc.*, 2024 WL 641020, at * 7-8 (E.D. Mich. Feb. 15, 2024) (granting preliminary injunction in favor of Tower in supplier dispute and adopting Tower's argument that "the unique nature of the automotive supply

chain makes irreparable harm inevitable where a shutdown results from a supplier's refusal to deliver component parts"); *Eberspaecher N. Am., Inc. v. Nelson Glob. Prod., Inc.*, No. 12-11045, 2012 WL 1247174, at \*6 (E.D. Mich. Apr. 13, 2021) (granting motion for preliminary injunction and explaining that "the potentially catastrophic effects of a disruption in the supply chain of automotive parts is well established in the case law of this court"). Notably, in *Vari-Form*, Tower, itself, recognized that (1) such disruption constitutes irreparable harm and (2) a purchaser in Sonora's position is not required to pay the demanded higher prices in order to avoid that harm. *See Tower Automotive Operations USA I, LLC v. Vari-Form Manufacturing Inc.*, E.D. Mich. Case No. 24-cv-10144, at ECF No. 6, PageID.209-210, 219-220, 221-225; ECF No. 16, PageID.445-446, 461-463.

The third factor that the Court must consider is whether issuing the requested injunction would cause substantial harm to others. It would not. On the contrary, withholding the injunction would cause harm – to Ford and other entities in the supply chain.

The final factor that the Court must consider is whether the public interest would be served by the issuance of the injunction. It would. The public interest is served when the Court enforces viable contracts like the 2024 Purchase Orders (as renewed by the parties' conduct). The public is also served by the continued function of the automotive supply chain.

Thus, for all of the reasons identified above, and the reasons explained in much greater detail on the record during the June 23, 2026, status conference, all of the applicable injunctive factors favor granting Sonora's requested injunction. Sonora's motion for preliminary injunction (ECF No. 11) is therefore **GRANTED.** Through December 31, 2026, Tower shall continue to supply Sonora with its requirements for parts under the terms of the 2024 Purchase Orders.

Finally, the Court addresses whether to require Sonora to post security under Rule 65(c) of the Federal Rules of Civil Procedure. That rule provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). While the language of Rule 65(c) "appears to be mandatory," the rule in the Sixth Circuit "has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).

Here, the Court declines to require Sonora to post security for the injunction. Tower did not request security, and there has been no suggestion that Tower would be unable to recover damages from Sonora in the event that it incurs losses as a result of the injunction. Moreover, while the injunction may require Tower to "expend capital, labor, and other resources to meet [Sonora's] requirements," Sonora "will

7

continue to pay [Tower] for the parts it supplies" under the terms of the 2024 Purchase Orders. *Detroit Diesel Corp. v. Martinrea Honsel Mexico SA de CV*, 2025 WL 1859916, at * 7 (E.D. Mich. Mar. 21, 2025) (declining to require security for injunction in auto parts dispute where enjoined party did not ask for security, did not allege that it would suffer damages if it was wrongfully enjoined, and continued to be paid for parts it supplied during the term of the injunction).  For all of these reasons, the Court waives posting of security.

   **IT IS SO ORDERED**.

<div style="margin-left:40%">

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

</div>

Dated:  June 24, 2026

   I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 24, 2026, by electronic means and/or ordinary mail.

<div style="margin-left:40%">

s/Holly A. Ryan
Case Manager
(313) 234-5126

</div>