UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L & W LLC, *et al.*,

Plaintiffs,

Case No. 26-cv-11312
Hon. Matthew F. Leitman

v.

SONORA FORMING S.A. de C.V.,

Defendant.
_________________________________________________________________/

**ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CERTAIN QUESTIONS TO THE MICHIGAN SUPREME COURT (ECF No. 29)**

Now before the Court is a motion by Plaintiffs L&W LLC, L&W Cleveland, Inc., and Tower Automotive Operations USA I, LLC (collectively, "Tower") to Certify Certain Questions to the Michigan Supreme Court. (*See* Mot., ECF No. 29.) For the reasons explained below, Tower's motion is **DENIED**.

**I**

**A**

Defendant Sonora Forming S.A. de C.V. ("Sonora") is a tier-1 automotive supplier that supplies parts for use in certain vehicles manufactured by Ford Motor Company. Tower is a tier-2 automotive supplier that supplies parts to Sonora.

Beginning in 2019, and in each subsequent year except for 2022, Sonora issued a series of blanket purchase orders to Tower for parts that Sonora needed to

manufacture suspension assemblies.[1] The face of the blanket purchase orders did not specify the quantity of parts that Sonora would purchase. Instead, those orders incorporated Sonora's Standard and Terms and Conditions[2] (*see, e.g.*, Blanket Purchase Order, ECF No. 11-4, PageID.85), and those Terms and Conditions supplied the quantity term. More specifically, Section 5(b) of the Terms and Conditions provide that where, as here, the applicable purchase orders do not designate a specific quantity of parts and are designated as a "Blanket Order," then Sonora will purchase anywhere between "no less than one piece or unit of each of the Goods … and no more than one hundred percent (100%) of [Sonora's] requirements for the Goods" (the "Quantity Term"). (Terms and Conditions, ECF No. 11-5, PageID.99.)

Each purchase order expired at the end of the calendar year in which it was issued. (*See*, *e.g.*, 2023 Purchase Orders, bearing the expiration date of December 31, 2023, ECF No. 11-7.) Consistent with this practice, in 2024, Sonora issued a series of purchase orders to Tower that bore an expiration date of December 31, 2024 (the "2024 Purchase Orders"). (*See* 2024 Purchase Orders, ECF No. 11-8.)

---

[1] Sonora did not issue a purchase order to Tower for the calendar year 2022, but the parties nonetheless continued their performance in the ordinary course during that year.

[2] The Terms and Conditions are from a company called Magna. Sonora is an affiliate of Magna and uses Magna's Terms and Conditions. (*See* Blanket Purchase Order, ECF No. 11-4, PageID.85.)

When the 2024 Purchase Orders expired on December 31, 2024, Sonora did not issue a new set of written purchase orders for 2025. Nor did it issue a new set of written purchase orders for 2026. Nonetheless (and even though the 2024 Purchase Orders had expired), from January 1, 2025, through March of 2026, Sonora continued to purchase from Tower the parts identified in the 2024 Purchase Orders on the same terms specified in those orders.

In March of 2026, a dispute arose between the parties as to whether the terms of the 2024 Purchase Orders were still in effect. Sonora contended that those terms continued to govern because the parties, through their conduct, had renewed the 2024 Purchase Orders for two additional one-year terms – *i.e.*, for calendar year 2025 and calendar year 2026 – after the orders expired. Tower countered that terms of the 2024 Purchase Orders did not govern because those orders had expired and because the parties had not renewed the orders through their conduct. Tower contended that because the 2024 Purchase Orders had expired, it (Tower) was free to demand a higher price per part than the price specified in those orders.

On April 21, 2026, Tower filed this civil action in which it seeks entry of a judgment declaring that the terms of the 2024 Purchase Orders no longer govern the parties' relationship. (*See* Compl., ECF No. 1.)

On May 18, 2026, Sonora filed a motion for preliminary injunction in which it asked the Court to, among other things, enter a preliminary injunction "requiring

[Tower] to immediately resume shipments of the [p]arts as and when ordered by [Sonora], pursuant to the terms of the [2024] Purchase Orders and at the prices stated in the [2024] Purchase Orders." (Mot., ECF No. 11, PageID.39.) Sonora argued that its requested relief was necessary because Tower had threatened to stop shipping parts under the terms of the 2024 Purchase Orders and/or had actually stopped doing so. (*See id.*, PageID.38.) In support of the motion, Sonora repeated its position that the terms of the 2024 Purchase Orders remained effective because the parties, through their conduct, had twice renewed those orders for one-year terms. (*See id.*, PageID.52.)

Tower countered that Sonora was not entitled to its requested injunctive relief because Sonora had failed to show a likelihood that that the terms of the 2024 Purchase Orders remained in effect and were enforceable. (*See* Resp., ECF No. 17, PageID.246.) More specifically, Tower argued that Sonora's claims would fail on the merits for five reasons:

> First, the [2024 Purchase Orders] have unequivocally expired. Second, [Sonora] does not (and cannot) meet its burden to prove an implied agreement requiring [Tower] to continue supplying [Sonora]. In fact, the evidence is to the contrary, *i.e.*, [Sonora] understood that it was required to issue a new Contract to extend the parties' agreement. Third, [Sonora's] argument that [Tower] agreed to continue supplying [Sonora] for as long as [Sonora] elects to order from [Tower] – by accepting releases after the [2024 Purchase Orders] expired – is illogical and expressly foreclosed by [Sonora's] terms. Fourth, [Sonora] does not (and cannot) meet its burden to prove

> that it is entitled to a reasonable transition period obligating [Tower] to continue supplying. Fifth, and finally, even if the [2024 Purchase Orders] were not expired, they create only an order-by-order contract – not a requirements contract – and [Tower] has no obligation to accept additional releases.

(*Id.*, PageID.236-237.)

Tower's fifth argument is relevant to the motion now before the Court. In that argument, Tower contended that the 2024 Purchase Orders did not create an enforceable requirements contract because the Quantity Term did not satisfy the statute of frauds under Michigan's Uniform Commercial Code. (*See id.*, PageID.250.) Tower acknowledged that the Michigan Court of Appeals had reached a contrary conclusion in *Cadillac Rubber & Plastics, Inc. v. Tubular Mets Sys., LLC*, 952 N.W.2d. 576 (Mich. Ct. App. 2020) (finding that a quantity term that was identical to the Quantity Term here satisfied the statute of frauds), but Tower contended that *Cadillac Rubber* was no longer good law in light of the Michigan Supreme Court's decision in *MSSC, Inc. v. Airboss Flexible Prods. Co*., 999 N.W.2d 335 (Mich. 2023). (*See* Resp., ECF No. 17, PageID.250.) Sonora responded that in *FCA US LLC v. Kamax Inc.*, No. 371234, 2025 WL 1420392, at *2 (Mich. Ct. App. May 14, 2025), the Michigan Court of Appeals (1) rejected Tower's argument that *Airboss* implicitly overruled *Cadillac Rubber*; and (2) reaffirmed that *Cadillac Rubber* remains good law. (*See* Reply, ECF No. 19, PageID.355.)

The Court granted Sonora's motion and issued an injunction requiring Tower to continue selling parts to Sonora through the end of 2026 on the terms set forth in the 2024 Purchase Orders. (*See* Order, ECF No. 22.) The Court first found, on a preliminary basis, that Sonora had shown a likelihood of success on its contention that the parties, through their conduct, had renewed the 2024 Purchase Orders in both 2025 and 2026. (*See id.*, PageID.394.) The Court next accepted, on a preliminary basis, Sonora's argument that *Cadillac Rubber* (as reaffirmed by *Kamax*) accurately and authoritatively stated the rule in Michigan that a quantity term complies with the statute of frauds where it requires a purchaser to buy "no less than one piece or unit … and no more than one hundred percent (100%) of [its] requirements." (*Id.*, PageID.394-395.) The Court therefore concluded that Sonora had shown a likelihood that the Quantity Term complied with Michigan's statute of frauds. (*See id.*, PageID.395.)

**B**

On July 27, 2026, Tower filed its motion to certify. (*See* Mot., ECF No. 29.) Tower asks this Court to certify two questions to the Michigan Supreme Court:

1. Whether *Cadillac Rubber & Plastics, Inc v. Tubular Metal Sys, LLC*, 331 Mich. App. 416 (2020), remains "good law" after the Michigan Supreme Court's decision in *MSSC, Inc. v. Airboss Flexible Prods Co.*, 511 Mich. 176 (2023); and

> 2. Whether a written contract providing that "…Buyer shall purchase no less than one piece or unit of each of the Goods or the Services and no more than one hundred percent (100%) of Buyer's requirements for the Goods…" satisfies the requirements of the Uniform Commercial Code's statute of frauds, MCL 440.2201(1).

(*Id*., PageID.648.)

According to Tower, certification is warranted in light of the fact that "courts in the Michigan Court of Appeals, the United States Federal Court for the Eastern and Western Districts of Michigan, and the Sixth Circuit Court of Appeals" have "reached different, and indeed conflicting, answers to these questions." (*Id*., PageID.655.) Moreover, Tower tells the Court that "certification will substantially benefit the public interest by providing the Michigan Supreme Court a new opportunity to bring much needed clarity to an issue that is of critical importance to the automotive industry, and other manufacturers, across Michigan and nationwide." (*Id*., PageID.657.)

On October 16, 2026, the Court held a hearing on Tower's motion.

**II**

This Court's Local Rule 83.40 establishes a three-part test that the Court applies in determining whether to certify a question to the Michigan Supreme Court. Rule 83.40 provides that this Court "may certify an issue for decision to the highest Court of the State whose law governs its disposition" when "the issue certified is an unsettled issue of State law, and the issue certified will likely control the outcome of

the federal suit, and certification of the issue will not cause undue delay or prejudice." E.D. Mich. L.R. 83.40(a).[3]

"The decision to certify a question to a state court lies within [a federal court's] sound discretion." *Smith v. Joy Technologies, Inc.*, 828 F.3d 391, 397 (6th Cir. 2016) (internal citation omitted). In general, federal courts should "not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Id.* (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009)).

Where existing state "law provides well-established principles to govern the outcome of the case," a federal court may properly decline to certify a question to a state court even where a state supreme court "has not addressed the exact question at issue." *Id.* (internal citation omitted). *See also Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 610 (6th Cir. 2012) (denying request to certify question to Michigan Supreme Court where court "s[aw] a reasonably clear and principled course" to resolve legal question in dispute). More specifically, a federal court may properly deny certification where decisions of a state's intermediate appellate courts settle the question.

[3] The Michigan Court Rules also have a rule governing the certification of questions to the Michigan Supreme Court. Michigan Court Rule 7.308(A)(2) provides that "[w]hen a federal court ... considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative ... certify the question to the [Michigan Supreme] Court."

The Sixth Circuit's decision in *Devereux v. Knox Cnty., Tennessee*, 15 F.4th 388, 398 (6th Cir. 2021), is instructive in that regard. In *Devereux*, the parties filed a joint motion before the Sixth Circuit asking that court to certify a question of Tennessee law to the Tennessee Supreme Court. Under the governing Tennessee rule, when faced with a motion to certify a question, "[t]he certifying court must 'determine[ ] that, in a proceeding before it, there are questions of [Tennessee] law ... which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.'" *Id.* (quoting Tenn. Ct. R. 23(1)). Even though the question the parties sought to be certified in *Devereux* had not been answered by the Supreme Court of Tennessee, the Sixth Circuit declined to certify the question because, among other reasons, the question had been settled by controlling decisions of the state's *intermediate appellate court*. *See id.* at 394-98 (justifying denial of certification on the basis that "there exist[ed] sufficient Tennessee appellate case law addressing questions similar to the one the parties seek to certify" and citing only decisions of the Tennessee Court of Appeals). *See also Farmer v. Travelers Indem. Co.*, 539 F.2d 562 (5th Cir. 1976) (declining to certify question to Florida Supreme Court where question had been decided by intermediate appellate court and stressing that "[w]e do not intend to abuse th[e] privilege [of certification to the Florida Supreme Court]

by certifying every state law question which has been authoritatively decided by a Florida District Court of Appeal.").

**III**

The Court concludes that because none of the requirements for certification under Rule 83.40 are met, certification to the Michigan Supreme Court is not warranted here.

**A**

First, while the questions that Tower seeks to certify have not been squarely addressed by the Michigan Supreme Court, they are not sufficiently unsettled under Michigan law as to support certification. The first factor that the Court must consider under Local Rule 83.40 thus weighs against certification.

**1**

In applying the first factor of the certification test, it is helpful to begin with a review of the relevant case law. The Court starts with the earliest decision in the applicable line of cases, *Acemco, Inc. v. Olympic Steel Lafayette, Inc.*, No. 256638, 2005 WL 2810716 (Mich. Ct. App. Oct. 27, 2005). *Acemco* involved a contract for the purchase of goods that contained the following quantity term: "[D]uring the term of this Agreement, the Seller agrees to sell to the Buyer such quantities of the Products as the Buyer may specify in its purchase orders, which the buyer may deliver at its discretion." *Id.* at *1. The question before the court was whether that

term satisfied the statute of frauds in Michigan's version of the Uniform Commercial Code. The Michigan Court of Appeals held that it did not:

> Reasonable minds could not construe the above language as containing a quantity term because the language specifies no quantity whatsoever. The language instead grants complete discretion to the buyer to deliver purchase orders containing any amount or no amount at its discretion without any other limiting feature. The grant of complete discretion results in a countless number of possible quantities from zero to infinity.

*Id*. at *4. The court concluded that "'any' quantity is in fact no quantity at all," and it held that that because the contract permitted the buyer to purchase "any" quantity, it "violate[d] the statute of frauds" and was "wholly unenforceable." *Id*. at *1, 4.

Next came *Cadillac Rubber*. In that case, the Michigan Court of Appeals was presented with a variation of the question at issue in *Acemco*. Instead of a contract with no quantity term at all, the contract at issue in *Cadillac Rubber* provided that "Buyer shall purchase no less than one piece or unit of each of the Supplies and no more than one hundred percent (100%) of Buyer's requirements for the Supplies." *Cadillac Rubber*, 952 N.W.2d at 578. Unlike in *Acemco*, the Court of Appeals held that that language was sufficient to form an enforceable requirements contract. *See id.* at 583.

The Michigan Supreme Court then decided *Airboss*. That case involved a contract that "made no reference anywhere to a quantity term." *Airboss*, 999 N.W.2d at 343. The court held that because "[t]he purchase order and terms and conditions

leave both the quantity term and total quantity undefined," the contract "violate[d] the UCC's statute of frauds." *Id.* at 345. Before announcing that holding, the court said that a quantity term in a contract for the sale of goods satisfies the statute of frauds where it requires the buyer to purchase a "a set share of its total need from the seller." *Id.* at 339-40.

The court in *Airboss* also expressly declined one of the party's invitations to overrule *Cadillac Rubber*. The court determined that it was not necessary to address *Cadillac Rubber* because unlike the contract in *Cadillac Rubber*, the contract before the court in *Airboss* contained no quantity term at all:

> Airboss has urged us to overrule the holding in *Cadillac Rubber* that the purchase order's language providing for 'a quantity between one part and 100%' constituted a proper quantity term for a nonexclusive contract under MCL 440.2201(1), thus allowing for the use of parol evidence to determine the parties' intent as to the existence of a requirements contract. Airboss urges us instead to adopt the position taken in *Acemco*, unpub. op. at 5, which held that a requirements contract cannot grant 'complete discretion' to the buyer because '[a]ny quantity is in fact no quantity at all.' We decline to address this apparent inconsistency today because, in this case, there was no quantity term set forth in the purchase order or in any other document. Whether *Cadillac Rubber* and *Acemco* can be reconciled and, if not, which is correct remain questions for another day.

*Id*. at 345 n.4.

Next, the Sixth Circuit decided *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400 (6th Cir. 2024). *Higuchi* also involved a dispute over whether certain

"purchase orders [were] void under the statute of frauds because they [did] not request a quantity of goods." *Id.* at 405. The purchase orders at issue, like those in *Airboss*, did not include any quantity term. Instead, each purchase order provided only that the purchase order was "issued to cover [the buyer's] requirements." *Id.* at 406-07. The Sixth Circuit looked to *Airboss* to guide its analysis. The court explained that *Airboss* had recently "brought order" to the previously "muddled" rules "regarding what counted as a clear quantity term" for purposes of a requirements contract. *Id*. at 406. As the court read *Airboss*, that decision demanded that a "quantity term [in a requirements contract], on its face and as written," must be "clear and precise." *Id.* at 406. Applying that understanding of *Airboss*, the court concluded that the purchase orders at issue did not satisfy the statute of frauds because they "did not "unambiguously obligate [buyer] to purchase its requirements from [seller], let alone precisely state the specific share of requirements at issue." *Id.* at 406-07. The court stressed that the purchase orders did not "plainly state that [buyer] will buy a specific percentage of its requirements, 'all' of its requirements, or any equivalent language, from [seller]." *Id.* at 407. The court neither mentioned *Cadillac Rubber* nor attempted to harmonize its reading of Michigan law with that decision.

Finally (and after *Higuchi*), in *FCA US LLC v. Kamax Inc.*, --- N.W.3d ----, 2025 WL 1420392 (Mich. App. May 14, 2025) the Michigan Court of Appeals

squarely addressed the question of whether *Cadillac Rubber* remained good law following *Airboss*. Like *Cadillac Rubber*, *Kamax* involved a purchase order with a quantity term that provided: "this order is for approximately 65%-100% of our requirements." *Id.* at *1. The parties disputed whether, after *Airboss*, that quantity term was sufficient to satisfy the statute of frauds. The court held that *Cadillac Rubber* was not displaced by *Airboss* because the purchase orders in the two decisions were materially distinguishable. In a passage worth quoting at length, the court explained:

> In *Airboss*, the contract at issue did 'not contain a quantity term.' *Airboss*, 511 Mich. at 190, 999 N.W.2d 335. Indeed, the Supreme Court distinguished the facts of *Airboss* from those in *Cadillac Rubber* on this basis, stating:
>
>> As an initial matter, we agree with the Court of Appeals in *Cadillac Rubber* that requirements contracts do not always have to be exclusive. A seller can agree to provide a nonexclusive part of the buyer's total need. But the trial court in this matter relied on *Cadillac Rubber* to find that the use of a blanket purchase order combined with a substantial history of prior dealings between the parties created a requirements contract that bound Airboss. This was erroneous because in *Cadillac Rubber*, the Court found the existence of a quantity term—"a quantity between one part and 100%"—which therefore allowed it to use evidence of past practice (or parol evidence) to discern the parties' intent. [*Id.* at 194, 999 N.W.2d 335.]
>
> In a footnote, the Court expressly addressed the defendant's argument that the Court should overrule *Cadillac Rubber*:

> [The defendant] has urged us to overrule the holding in *Cadillac Rubber* that the purchase order's language providing for "a quantity between one part and 100%" constituted a proper quantity term for a nonexclusive contract under MCL 440.2201(1), thus allowing for the use of parol evidence to determine the parties' intent as to the existence of a requirements contract. [The defendant] urges us instead to adopt the position taken in [*Acemco, Inc v Olympic Steel Lafayette, Inc*, unpublished per curiam opinion of the Court of Appeals, issued October 27, 2005, 2005 WL 2810716 (Docket No. 256638), p 5], which held that a requirements contract cannot grant "complete discretion" to the buyer because " '[a]ny' quantity is in fact no quantity at all." We decline to address this apparent inconsistency today because, in this case, there was no quantity term set forth in the purchase order or in any other document. Whether *Cadillac Rubber* and *Acemco* can be reconciled and, if not, which is correct remain questions for another day. [*Airboss*, 511 Mich. at 194 n 4, 999 N.W.2d 335.]

Kamax suggests the issue left "for another day" is whether *Cadillac Rubber* remains good law after *Airboss* was decided. However, nothing in footnote 4 indicates that there is a conflict between *Cadillac Rubber* and *Airboss*. Instead, the Supreme Court acknowledged an inconsistency between *Cadillac Rubber* and this Court's unpublished decision in *Acemco*. The Court expressly declined to consider which case reached the correct result, leaving *that* question "for another day."[2]

More generally, Kamax appears to argue that *Cadillac Rubber* is inconsistent with *Airboss*'s general explanation of requirements contracts insofar as *Airboss* recognized that a requirements contract requires a quantity term. However, the necessity of a quantity term is not a new holding from *Airboss*. It is a basic principle of the statute

of frauds applicable to UCC contracts involving the sale of goods over $1,000. Indeed, *Cadillac Rubber* addressed the contract language at issue in light of the statute of frauds and discussed the precision that is required for a quantity term. Further, while Kamax appears to argue for a quantity term that "specifies a precise set share," *Airboss* did not make such a holding. Instead, consistent with *Cadillac Rubber*, the Court in *Airboss* recognized that "[a] requirements contract can be nonspecific as to the quantity, but it must still have a quantity term that can be evaluated further using parol evidence." *Airboss*, 511 Mich at 191, 999 N.W.2d 335. Under *Cadillac Rubber*'s reasoning, a specified range—as in this case, 65% to 100%—may be nonspecific, but it is a quantity that can be evaluated further using parol evidence. See *id.* at 194, 999 N.W.2d 335 (distinguishing *Cadillac Rubber* on this basis). *Airboss*, however, did not involve such a range, nor did *Airboss* consider the permissibility of such a range. Instead, as quoted above, *Airboss* expressly declined to address *Cadillac Rubber*'s holding that "the purchase order's language providing for 'a quantity between one part and 100%' constituted a proper quantity term for a nonexclusive contract under MCL 440.2201(1), thus allowing for the use of parol evidence to determine the parties' intent as to the existence of a requirements contract." *Id.* at 194 n 4, 999 N.W.2d 335. *Cadillac Rubber*'s holding, therefore, was left intact by the Supreme Court in *Airboss*.

In sum, *Airboss* and *Cadillac Rubber* are distinguishable and do not conflict. The contract in *Cadillac Rubber* provided "that Buyer shall purchase no less than one piece or unit of each of the Supplies and no more than one hundred percent (100%) of Buyer's requirements for the Supplies." *Cadillac Rubber*, 331 Mich App at 419-420, 952 N.W.2d 576. In *Airboss*, in contrast, the contracts contained no minimum term. *Airboss*, 511 Mich. at 195, 999 N.W.2d 335. Here, because the contract at issue requires FCA to purchase between 65% and 100% of its needs from Kamax, *Cadillac Rubber* governs, not *Airboss*.

> Under the reasoning in *Cadillac Rubber*, the purchase order's language providing for a quantity between 65% and 100% constituted a proper quantity term for a nonexclusive contract under MCL 440.2201(1).

*Id.* at *3-4. After the Michigan Court of Appeals decided *Kamax*, the Michigan Supreme Court granted leave to appeal from that decision, *see FCA US, LLC v. Kamax Mexico S de RL de CV*, 26 N.W.3d 430 (Mich. 2025), but that court later dismissed the appeal when the parties settled just prior to oral argument. *See FCA US, LLC v. KAMAX Mexico S. se R.L. de C.V.*, 33 N.W.3d 362 (Mich. 2026).

**2**

*Kamax* provides sufficient clarity as to the primary issue that Tower seeks to certify – whether *Cadillac Rubber* remains good law – such that certification to the Michigan Supreme Court is not warranted. As an initial matter, *Kamax* authoritatively settles that question for purposes of litigation in all Michigan state courts other than the Supreme Court of Michigan. Under Michigan Court Rule 7.215(c)(2), as a published decision of the Michigan Court of Appeals, *Kamax* is "binding precedent" that must be followed by the Court of Appeals and all lower courts in Michigan unless and until it is overruled. *Ramos v. Intercare Cmty. Health Network*, 916 N.W.2d 287, 290 (Mich. Ct. App. 2018). Thus, with respect to litigation in Michigan state courts, the continued viability of *Cadillac Rubber* is, for now, a settled matter.

Likewise, in light of *Kamax*, the continued viability of *Cadillac Rubber* in federal court is not unsettled. Here is why. A federal court must "determine the meaning of state law by reference to the decisions of its highest court." *Voutsiotis v. PNC Bank, NA*, 178 F.4th 951, 962 (6th Cir. 2026). But where that court has not resolved a question of state law, "intermediate state appellate court decisions constitute the next best indicia of what state law is." *Id.* (quoting *United States v. Southers*, 866 F.3d 364, 368 (6th Cir. 2017)). Indeed, "in the absence of specific guidance from the state's highest court, [the Sixth Circuit deems itself] 'obligated to follow published intermediate state appellate court decisions unless [it is] convinced that the highest court would decide differently.'" *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 697 (6th Cir. 2013) (quoting *Ruth v. Bituminous Cas. Corp.,* 427 F.2d 290, 292 (6th Cir. 1970)). Here, Tower has failed to convince the Court that the Michigan Supreme Court would reject the holding of *Kamax* that *Cadillac Rubber* remains good law. While Tower has admittedly raised some reasonable arguments as to why that court could conceivably part ways with *Kamax*, it has not demonstrated a likelihood that the court would do so. Because Tower has failed to make a convincing showing that the Michigan Supreme Court would reject *Kamax*, this Court (and other federal courts confronted with the same issue) are "obligated" to follow *Kamax* and to continue to apply *Cadillac Rubber*. *Id. See also Webasto Roof Sys., Inc. v. Meteor Sealing Sys., LLC*, No. 26-10141, 2026 WL

308912, at *3 (E.D. Mich. Feb. 5, 2026) (concluding that it "must follow *Kamax*")[4]. Under these circumstances, the relevant law is not sufficiently unsettled as to warrant certification. *See Devereaux*, 15 F.4th at 398 (declining to certify question to Tennessee Supreme Court because, among other reasons, parties had failed to make persuasive showing that Tennessee Supreme Court would deviate from controlling decision of Tennessee Court of Appeals).

The Sixth Circuit's decision in *Higuchi* does not undermine that conclusion. While there is language in *Higuchi* that is admittedly in some tension with *Cadillac Rubber* – *e.g.*, the Sixth Circuit's statement that a quantity term must be specific and precise – the actual holding of *Higuchi* can be reconciled with *Cadillac Rubber* in the same way that the Michigan Court of Appeals in *Kamax* reconciled the holding in *Airboss* with *Cadillac Rubber*. As explained above, the purchase orders at issue in *Higuchi* (like the purchase orders in *Airboss*) contained no quantity term at all, whereas the purchase orders in *Cadillac Rubber* did contain a quantity term (albeit a broadly worded one). Thus, the holding in *Higuchi* that those purchase orders did not satisfy the statute of frauds (like the holding in *Airboss*) does not negate the holding in *Cadillac Rubber*. *See Webasto*, No. 26-10141, 2026 WL 308912, at *3

[4] The injunction entered by the court in *Webasto Roof Systems* when it issued the ruling quoted above was subsequently vacated pursuant to a stipulation of the parties. *See Webasto Roof Sys., Inc. v. Meteor Sealing Sys.*, No. 26-10141, 2026 WL 3221961 (E.D. Mich. Feb. 27, 2026).

(adhering to *Cadillac Rubber* notwithstanding *Higuchi*). Moreover, *Kamax* was decided after *Higuchi*, and to the extent that two decisions cannot be reconciled, *Kamax* should control because Tower has failed to show that the Michigan Supreme Court would reject the conclusion in *Kamax* that *Cadillac Rubber* survives. *See Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 357 (6th Cir. 2018) (explaining "that a single decision of a state court of appeals may abrogate this Court's interpretation of state law, at least in circumstances where (1) state law treats an appellate court decision as controlling in the absence of a ruling from the state supreme court; (2) there is no indication from the state supreme court that it would reach a different outcome; and (3) the state appellate court's decision is irreconcilable with our own ruling.").

For all of these reasons, Tower has failed to show that the question of whether *Cadillac Rubber* remains viable is sufficiently unsettled such that certification is warranted. To be sure, Tower has a raised a number of reasonable arguments as to why the Michigan Supreme Court may ultimately be persuaded to overrule *Cadillac Rubber*. But Tower has not shown that the status of that decision is, at least for now, so uncertain as to justify certifying the proposed questions to the Michigan Supreme Court.

### B

Second, Tower has failed to persuade the Court that the resolution of its proposed certified questions is *likely* to resolve this case. As set forth above, Tower's statute of frauds defense – the defense to which its proposed certified questions relate – is one of two primary lines of defense that it has presented in this case. For its other main defense, Tower contends that the parties were not subject to a binding contract at the relevant time because the 2024 Purchase Orders expired at the end of 2024. If Tower prevails on that line of defense, the Court will not need to reach Tower's statute of frauds defense. Because there is uncertainty as to whether the Court will even need to reach the statute of frauds defense, the Court cannot conclude that answering certified questions related to that defense are *likely* to resolve the case.[5] Thus, the second factor under Rule 83.40 does not support certification.

### C

Finally, the Court concludes that pausing these proceedings to certify Tower's proposed questions to the Michigan Supreme Court would cause undue delay. The

[5] It is, of course, true that when the Court issued the preliminary injunction in this action, the Court found a likelihood that Tower would not prevail on its defense that the 2024 Purchase Orders expired without being renewed. (*See* Ord., ECF No.22, PageID.394.) But the Court made that ruling on a preliminary basis and with a limited factual record. The Court expects Tower to further develop and present the defense as this action proceeds.

delay would be undue, in the Court's view, because it does not appear likely that the Michigan Supreme Court would accept review of the questions proposed by Tower. And it strikes the Court as inefficient to put these proceedings on ice when the odds of review by the Michigan Supreme Court do not seem favorable.

At least two circumstances persuade the Court that it is not likely that the Michigan Supreme Court would accept review of Tower's proposed questions. First, that court had an opportunity to answer these very same questions in *Kamax*, and it declined to do so. While it is true that the parties had resolved their dispute shortly before oral argument, the Michigan Supreme Court nonetheless could have proceeded to decide the case. *See Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 693-696 (Mich. 2010) (explaining that Michigan state courts are not subject to the "case or controversy" requirement found in Article III of the United States Constitution); Mich. Ct. Rule 7.318 (authorizing the Michigan Supreme Court to "deny" a "stipulation" agreeing to the "dismissal" of an appeal "if [the court] concludes that the matter should be decided notwithstanding the stipulation."). Alternatively, the Michigan Supreme Court could have stripped *Kamax* of its precedential value without deciding for itself the question presented on the merits. See *Bernthal v. Aetna Cas. & Sur. Co.*, 514 N.W.2d 465, 466 (Mich. 1994) (accepting stipulation dismissing appeal and directing that published Michigan Court of Appeals decision "shall have no precedential force or effect.") That the

court declined to take either approach could, perhaps, suggest that the court is content to let *Kamax* stand.[6]

Second, at least one member of the Michigan Supreme Court has suggested that it may be less appropriate for that court to accept certification from a federal court under the circumstances presented here. In *In re Certified Question from United States Dist. Ct. for E. Dist. of Michigan*, 21 N.W.3d 918 (Mich. 2025), Chief Justice Megan Cavanagh expressed some hesitation in accepting review of a question certified by a federal court presiding over a diversity action where the question is controlled by a published Michigan Court of Appeals decision:

> To be sure, I recognize that Court of Appeals precedent carries less persuasive weight than decisions of our Court when determining whether an issue of state law is a settled one. And, true, MCR 7.308(A)(2)(a) speaks only of controlling precedent from the 'Michigan Supreme Court.' But I believe that how our Court of Appeals has interpreted our precedent and applied it to the very issue in dispute certainly remains probative of whether such precedent controls a certified question under MCR 7.308(A)(2)(a).
>
> *This is especially so when, as here, a federal court exercises diversity jurisdiction.* As a matter of constitutional law, a federal court sitting in diversity must apply state substantive law, *Erie R Co v Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and state substantive law includes published state court of appeals

[6] The Court recognizes that the Michigan Supreme Court may have dismissed the appeal based upon its conclusion that it would be inappropriate to decide the case in the absence of a continuing dispute between the parties and/or in the absence of oral argument.

> decisions absent persuasive data calling those decisions into question, see *West v American Tel & Tel Co*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940) (holding that when "an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"); MCR 7.215(C)(2) (according published Court of Appeals opinions precedential authority in state courts).

*Id.* n.3 (emphasis added). To the extent that other members of the Michigan Supreme Court share Chief Justice Cavanagh's views, the existence of *Kamax* would seem to reduce the odds that the Michigan Supreme Court would accept review of the questions proposed by Tower.

The bottom line is this: the Court has serious questions about whether the Michigan Supreme Court would be likely to accept review of Tower's proposed questions. In light of that uncertainty, the Court concludes that the lengthy delay associated with the process of requesting certification would be undue. Thus, the third factor under Rule 83.40 does not support certification under these circumstances.

**IV**

For all of the reasons explained above, Tower's motion to certify (ECF No. 29) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2026

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 19, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126